UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-00678-H

GREGORY BICKLEY,                                                                                          PLAINTIFF

V.

DISH NETWORK, LLC and                                                                              DEFENDANTS
EQUIFAX INFORMATION SERVICES LLC,

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Gregory Bickley, brings this action alleging that Defendants, DISH Network, LLC ("DISH Network" or "Defendant") and Equifax Information Services LLC ("Equifax"), willfully or negligently failed to comply with the federal Fair Credit Reporting Act ("FCRA") regarding the release and use of his credit report. As a result of the unauthorized release and use of his credit report, Bickley additionally charges Defendants with intentional infliction of emotional distress. DISH Network now moves for summary judgment on all claims against it and for default judgment, or in the alternative summary judgment, on its counterclaim.[1] For the reasons that follow, the Court will sustain DISH Network's motion for summary judgment on Counts One, Two and Six of Plaintiff's Amended Complaint, as each pertains to DISH Network.

I.

DISH Network is a national provider of direct broadcast services. American Satellite was an independent, non-exclusive third-party retailer of DISH Network. On October 7, 2009, an unknown person called American Satellite to obtain a DISH Network service. The caller first

---

[1] Pursuant to this Court's recent decision granting Bickley's motion for judgment on the pleadings regarding DISH Network's abuse of process counterclaim, DISH Network's motion for default judgment, or summary judgment in the alternative, on the counterclaim is rendered moot.

provided the name Patrice Louis. American Satellite denied her request to purchase the service for some unidentified reason. A second individual then got on the phone and provided the American Satellite representative with the name "Gregrina Dickley" (or some variation thereof) and Plaintiff Gregory Bickley's Social Security Number ("SSN"). American Satellite sent this information to DISH Network's credit reporting agencies, which returned a "Declined No Hit" response. The "Declined No Hit" response indicates that the name and SSN provided did not produce a confident match with any person in the credit reporting agencies' systems. After offering another promotion for which the first caller was qualified, the parties terminated the phone call.

   DISH Network, and those retailers like American Satellite using DISH Network's electronic interface, follows a "waterfall" approach to check consumer credit reports. After gathering the necessary information from the potential customer, which usually includes a name, address, telephone number and SSN, DISH Network, or the third-party retailer, provides that information to its primary credit reporting bureau, Equifax, a credit reporting agency as defined under the FCRA. Equifax directs this information through its internal fraud detection process, and if no fraud is detected, the information advances through the credit search process. If during this process a match is found and a credit score is available, Equifax will return that information to DISH Network, or American Satellite as in this case. If the search process reveals a "Declined No Hit" response, Equifax then sends the potential customer's information to the secondary credit bureau, Experian. Experian then either finds a credit score and reports that to DISH Network or American Satellite, or generates a "Declined No Hit" response and sends the potential customer's information to the tertiary and final credit bureau, TransUnion. If TransUnion finds a match and credit score *or* if TransUnion determines that a "Declined No Hit" response is warranted, this information is sent to

DISH Network or American Satellite.  In sum, if DISH Network or American Satellite receives a "Declined No Hit" response, that response would have traveled through three separate credit bureaus, with only the third credit bureau forwarding that response to DISH Network or American Satellite.

In the present case, American Satellite provided Equifax with the potential customer's information.  After determining a "Declined No Hit" response, Equifax sent that information to Experian, which returned the same response.  Experian forwarded this information to TransUnion, which also generated a "Declined No Hit" response. TransUnion then reported this result back to American Satellite, the only entity to do so.[2]

On October 20, 2009, Gregory Bickley accessed his credit report to discover that DISH Network made an inquiry into his credit report, an action which both parties agree often adversely impacts the consumer's credit score.  Bickley alleges that as a result of finding this inquiry on his consumer report, he suffered from stress, depression, and anxiety so extreme that he saw a doctor who prescribed him anti-depressants.

At some point shortly thereafter, DISH Network contacted Bickley to inform him that someone used his SSN to attempt to purchase DISH Network services. DISH Network provided him with an audio copy of the telephone conversation between the American Satellite representative and the unknown caller.  At this time, Bickley knew he was the subject of identity theft, which was not the fault of any party to this lawsuit.

Although the timeline is a bit unclear, some time after he viewed the unauthorized inquiry from DISH Network on his consumer report and around the time he received the audio recording

---

[2] Equifax did record Gregory Bickley's credit score in its own internal database as a result of this process, which DISH Network employees did not access until investigating and providing discovery responses for this case.

of the imposter's telephone call, Bickley contacted his attorney and the Federal Trade Commission ("FTC") to report the identity theft. The FTC told Bickley to contact local law enforcement. Bickley contacted the Kentucky police and the Louisiana police, because the first person on the phone with American Satellite gave the American Satellite representative a Louisiana address. Both the Kentucky and Louisiana police departments told Bickley to contact the FTC. After this run-around endured for some time, Bickley filed suit in federal court.

Bickley requested that Equifax remove the inquiry, and when such a request is made in these circumstances, a credit reporting agency is under an obligation to remove that inquiry. Over the next few years, Bickley did not check his credit report for "old inquiries", so it is unclear from the facts when the DISH Network inquiry was removed from Bickley's consumer report.[3] However, both parties agree that credit report inquiries are removed from an individual's consumer report after two years, so this Court will assume that the relevant time period for assessing damages resulting from the DISH Network inquiry is two years from the date of the inquiry.

Bickley contends that between October 2009 and October 2011 one entity, a car dealership, denied him credit when he attempted to purchase a vehicle. According to Plaintiff, the car dealership refused to extend him credit, forcing Bickley to purchase the car under his wife's name. This, Bickley asserts, was a humiliating experience. Otherwise, it appears that Bickley never applied for or was denied credit during the period when the DISH Network inquiry purportedly remained on Bickley's consumer report.

Bickley filed his original Complaint in November 2010. This Court granted leave for Bickley to amend his Complaint, and in turn, for DISH Network to amend its counterclaim. The

---

[3] Bickley claims he checked his consumer report only to determine if new inquiries were made to ensure that the culprit who stole his SSN was no longer attempting to use his identity. He was not diligent in checking existing inquiries.

present motion is for summary judgment on all claims asserted in the Amended Complaint, which include Count One – willful noncompliance with the FCRA against DISH Network, Count Two – negligent noncompliance with the FCRA against DISH Network, and Count Six – intentional infliction of emotional distress as against only DISH Network.

The Court will grant summary judgment under FED. R. CIV. P. 56(c) where the moving party shows that there is no genuine issue as to any material fact proving an essential element of the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will consider the facts and allegations in a light most favorable to the nonmoving party. *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Viewed from this perspective, if the Court determines that the moving party has proven that it is entitled to judgment as a matter of law, the nonmoving party must present significant probative evidence to support its claim. *Celotex Corp.*, 477 U.S. at 324. Without such proof, the Court is compelled to grant summary judgment. Id.

II.

The FCRA provides liability for willful or negligent noncompliance with the FCRA under 15 U.S.C. § 1681n[4] or § 1681o[5] respectively. Plaintiff does not point to a specific provision of the

---

[4] This provision provides,
> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--
> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
> (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;
> (2) such amount of punitive damages as the court may allow; and
> (3) in the case of any successful action to enforce any liability under this section, the costs

FCRA that Defendant allegedly violated, but based on the language of his Complaint, Plaintiff seems to claim that Defendant did not access or use his credit report in accordance with a permissible purpose as outlined in 15 U.S.C. § 1681b(a). Under the FCRA, this amounts to a violation of § 1681b(f), which reads,

> A person shall not use or obtain a consumer report for any purpose unless – (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

In the 1996 amendment to the FCRA, Congress codified a private cause of action under § 1681n and § 1681o, under which users of consumer reports are barred from obtaining that information for impermissible purposes through the prohibition in § 1681(b)f. *Godby v. Wells Fargo Bank, N.A.*, 599 F.Supp. 2d 934, 937 (S.D. Ohio 2008) (holding that "the civil liability provisions now cover the act of obtaining a consumer report without a permissible purpose.").[6]

Under the FCRA, "a plaintiff must establish three elements in order to sustain a claim of improper use or acquisition of a credit report: (i) that there was a 'consumer report' within the meaning of the statute; (ii) that the defendant used or obtained it; and (iii) that the defendant did so

---

of the action together with reasonable attorney's fees as determined by the court.
15 U.S.C. § 1681n(a).

[5] This provision provides,
> Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--
> (1) any actual damages sustained by the consumer as a result of the failure; and
> (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681o(a).

[6] Defendant argues that Plaintiff's claim for negligent noncompliance fails as a matter of law. Plaintiff asserts that Defendant "knowingly and willfully, under false pretenses" obtained the consumer report, and Defendant argues that a person cannot simultaneously be negligent and willful. While it is true that an individual can only recover for knowing and willful noncompliance with the FCRA or for obtaining a consumer report under false pretenses under § 1681n, the willful noncompliance provision, Plaintiff can bring a claim for negligent noncompliance with the FCRA under the theory that Defendant negligently obtained the consumer report without a permissible purpose, under § 1681o. *See Duncan v. Handmaker*, 149 F.3d 424, 429 (6th Cir. 1998). Therefore, Plaintiff's claim for negligent noncompliance does not fail as a matter of law for the reasons Defendant proposes.

without a permissible statutory purpose." *Id.* at 938. Defendant asserts that Plaintiff cannot prove any of these, while Plaintiff contends that he has sufficiently shown that a genuine issue of material fact exists as to all three requirements. The Court will consider the first and third elements in depth.[7]

A.

To satisfy the first element, Plaintiff points to evidence that Defendant produced during discovery of DISH Network's audit trail that showed Plaintiff's credit score. That audit trail reveals a "Decision Detail Report" which publishes an "Echostar Risk" number based on the number of consumer initiated inquiries in the past 12 months, length of time bank revolving accounts have been opened, length of time accounts have been opened, and the percent of accounts opened in the past 24 months versus total accounts reported in the past 12 months.

Under the FCRA, a credit score is a consumer report as defined in 15 U.S.C. § 1681a(d).[8] While the "Echostar Risk" number may be a consumer report under the FCRA, DISH Network asserts that it only accessed this audit trail and uncovered the Echostar Risk number for the purposes of providing its vice president with information for her deposition for this lawsuit. Plaintiff does

---

[7] The Court will examine these elements because it appears that Plaintiff has proven a genuine issue as to the second element – that the Defendant used or obtained the consumer report. Plaintiff explains that DISH Network's name appears on the consumer report inquiries; DISH Network's own audit trail reveals that it accessed Plaintiff's credit report; and DISH Network possessed a password granting it access to Bickley's credit report via Equifax's website. Defendant asserts that DISH Network's name appears on the consumer report and audit trail because American Satellite was using DISH Network's interface; it was actually American Satellite that inquired into Plaintiff's credit score. Also, DISH Network did not access the credit score via Equifax's website until after Plaintiff had filed this lawsuit. This evidence is sufficient to create a genuine issue of material fact such that the Court will not address the second element of the claim.

[8] The definition for consumer report under the FCRA is as follows:
> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
> (B) employment purposes; or
> (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

not contest that DISH Network only accessed this audit trail the day before the deposition, which was more than one year after its original inquiry at issue in this case. Therefore, the Echostar Risk number is irrelevant to this issue.

DISH Network obtained two pieces of information from Equifax from the October 7, 2009 inquiry into Plaintiff's credit report that one could argue constituted a consumer report. First, DISH Network received a "Declined No Hit" response generated by TransUnion, but argues that this is not a consumer report. According to the statute, a consumer report bears "on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." 15 U.S.C. § 1681a(d)(1). The "Declined No Hit" response indicates that the consumer reporting agencies did not have a confident match between the name and the SSN provided. Because the "Declined No Hit" response bears in no way on the individual's creditworthiness or financial character, and Plaintiff provides no evidence to the contrary, the Court must conclude that this response does not constitute a consumer report under the FCRA.

The second piece of information DISH Network allegedly obtained was "header information" on Plaintiff, as evidenced in an e-mail from counsel for co-Defendant Equifax.[9] DISH Network asserts that "header information" is not a consumer report, and notes that the e-mail from Equifax's counsel stated that the "header information" was not a full credit report. In response, Plaintiff did not even argue that the "header information" was a credit report or provide the header information as evidence. Accordingly, the Court finds that the "header information" does not constitute a consumer report under the FCRA; Plaintiff does not argue otherwise, and thus fails to meet its burden of proving the opposite conclusion.

---

[9]The Court recognizes the obvious issue as to whether this is relevant evidence against DISH Network, but nonetheless will proceed in the analysis.

B.

The Court next considers whether DISH Network accessed the consumer report with a permissible purpose, the third element. DISH Network argues that it sought Plaintiff's credit score for the permissible purpose of a "legitimate business need for the information – (i) in connection with a business transaction that is initiated by the consumer; or (ii) to review an account to determine whether the consumer continues to meet the terms of the account." 15 U.S.C. § 1681b(a)(3)(F). This statutory language suggests that "Congress intended to allow access to a consumer report either when that access would benefit a consumer or would facilitate the collection of a pre-existing debt." *Smith v. Bob Smith Chevrolet, Inc.*, 275 F.Supp. 2d 808, 817 (W.D. Ky. 2003).

Plaintiff admitted in his deposition that, as evidenced in the audio recording of the telephone call that is the basis for the consumer report inquiry, American Satellite inquired into his credit score in an attempt to open an account for the imposter. In so doing, American Satellite was attempting to provide the potential customer with a service, while screening for insufficient credit history and for identity thieves. If this inquiry is legally attributable to DISH Network, the same is true for it.

The FCRA was enacted to ensure that consumer information "be kept private except under circumstances in which the consumer would be expected to wish otherwise or, by entering some relationship with a business, could be said to implicitly waive the Act's privacy to help further that relationship." *Id.* at 819 (quoting *Trans Union Corp. v. FTC*, 81 F.3d 228, 234 (D.C. Cir. 1996)). Presumably, a potential customer calling a service provider to set up an account relinquishes privacy to his or her credit score information in furtherance of that relationship. Therefore, American Satellite's inquiry into Plaintiff's credit report is permissible as a legitimate business need, even

though Plaintiff himself did not voluntarily surrender his privacy. *See Ewing v. Wells Fargo Bank*, 2012 WL 1844807, at *5 (D. Ariz. May 21, 2012)("The allegation that Plaintiff filed a police report for identity theft might indicate that someone used her identity to apply for another loan or some other credit transaction with Wells Fargo, in which case Wells Fargo might have had a legitimate reason for pulling Plaintiff's credit report."). To that end, American Satellite did not have the requisite culpability – here willfulness or even negligence in violating the FCRA – to impose civil liability when simply following through with normal procedures for any potential customer seeking to purchase DISH Network services.[10]

Plaintiff presents no evidence to controvert this. In his response to the pending motion, Plaintiff makes no allegations as to any illegitimate purpose beyond the bare assertion that DISH Network accessed his credit report without a permissible purpose. Moreover, Plaintiff presents no case law to support this bare assertion. Even taking the factual allegations made in all pleadings and briefings as favorable to the Plaintiff, Plaintiff has failed to show that DISH Network accessed his credit report with an impermissible purpose.

For all these reasons, Plaintiff's claim for willful and negligent noncompliance with the FCRA fails as a matter of law.

III.

Plaintiff next brings a claim for intentional infliction of emotional distress, a tort under Kentucky common law. This tort requires the plaintiff to prove the following:

1) the wrongdoer's conduct must be intentional or reckless;
2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;

---

[10]Moreover, Bickley admits in his deposition that he would not have discovered that he was the victim of an identity theft without this inquiry. Therefore the inquiry into his credit score served to protect him from identity theft. This is a circumstance in which the consumer likely welcomes the forfeiture of his private information in some degree.

>    3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and
>    4) the emotional distress must be severe.

*Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 2-3 (Ky. 1990)(citing *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984)). Plaintiff has not provided any evidence establishing that DISH Network's conduct was sufficiently egregious to satisfy this tort. Because the Court holds that DISH Network used and obtained Plaintiff's consumer report with a permissible purpose as defined by federal law, it is clear that DISH Network's conduct was not outrageous and intolerable. For this reason, Plaintiff's intentional infliction of emotional distress claim must also fail.

For the reasons stated herein, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that DISH Network's motion for summary judgment is SUSTAINED, and Count One, Count Two, and Count Six of Plaintiff's Complaint, to the extent these claims are against DISH Network, are DISMISSED WITH PREJUDICE. As a consequence, no claims remain against DISH Network.

cc:     Counsel of Record