UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-00678-H

GREGORY BICKLEY,                                              PLAINTIFF

V.

EQUIFAX INFORMATION SERVICES, LLC                            DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Gregory Bickley, brought suit seeking relief for injuries caused by Defendants,

Dish Network LLC ("Dish Network") and Equifax Information Services, LLC ("Equifax"), when

one or both of these entities allegedly accessed Bickley's credit report.  After a period of discovery,

Dish Network filed a motion for summary judgment as to Counts One, Two and Six of Bickley's

amended complaint.  ECF No. 38.  After the parties fully briefed the motion, the Court sustained

Dish Network's motion and dismissed all claims against it on November 2, 2012 ("November

Order").  ECF No. 56.  Bickley now moves for reconsideration of that order on the basis of new

evidence and the Court's clear error.  For the reasons stated herein, the Court denies Bickley's

motion.

I.

The facts are undisputed.  On October 7, 2009, an unknown person called Dish Network's

independent, non-exclusive third-party retailer, American Satellite, in an attempt to procure Dish

Network services.  At some point in the conversation with the American Satellite representative, the

caller provided the name Crgringina Dickley, or some variation thereof, and Bickley's social

security number as his or her personal information.  Using Dish Network's electronic interface, the

American Satellite representative provided Dish Network's credit reporting agencies with this information in an attempt to perform a credit check. The information first went to Equifax, which returned a "no hit" response. A "no hit" response means that the credit reporting agency could not find a confident match between the identifiers the caller gave and any person in their database. Through a waterfall process, the system then sent the caller's information to two other credit reporting agencies to see if the identifiers matched an individual in their databases. The secondary and tertiary reporting agencies also provided "no hit" responses.

On October 20, 2009, Bickley accessed his credit report and noticed that Dish Network made an inquiry into his credit report. Dish Network notified Bickley that he had been the victim of identity theft. Nearly a year later, on November 3, 2010, Bickley filed suit. Bickley alleged that Dish Network specifically engaged in willful and negligent noncompliance with the Fair Credit Reporting Act ("FCRA"), pursuant to 15 U.S.C. § 1681n and o, respectively.[1] The Court found that Dish Network did not violate either of these provisions.

A party may move the Court to reconsider a judgment or order pursuant to Fed. R. Civ. P. 59(e). The Court will grant relief pursuant to Rule 59(e) if "there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (internal citations omitted). Bickley advances two arguments as to why the Court should grant his motion: 1) because the Court exhibited a clear error of law when it prematurely and erroneously determined that Dish Network had a permissible purpose when it accessed Bickley's information, and 2) because new

---

[1] Bickley's amended complaint also contained a claim for intentional infliction of emotional distress against Dish Network, which the Court summarily dismissed in the November Order. Bickley does not attempt to resurrect this claim in the present motion, and therefore the claim remains dismissed.

evidence arose from Equifax undermining the Court's conclusions.  The Court will address both grounds for Bickley's motion.

A.

To constitute newly discovered evidence for purposes of the a motion to reconsider, the evidence must have been previously unavailable.  *GenCorp, Inc.*, 178 F.3d at 834.  Bickley argues that one of Equifax's answers to an interrogatory constitutes new evidence.   In this answer, Equifax states, *inter alia*, "Dish Network then requested Equifax to provide it with the consumer report containing the social security number that Dish Network had provided to Equifax.  Equifax provided Dish Network with a copy of Plaintiff's credit file because the file contained a matching social security number and address."  ECF No. 64.  Without going into more detail as to the context surrounding this Dish Network request, this interrogatory alone is vague and lacks probative value sufficient to rise to the level of evidence sufficient to warrant reconsideration.[2]

Moreover, it is unlikely that this evidence can be considered new.  In fact, Dish Network contends that the Court actually addressed this evidence in its November Order.   Dish Network argues that it requested Bickley's EchoStar Risk score, information received from Equifax that Dish Network kept in a password protected database, during the discovery process for this case.  If so, the Court previously discussed this evidence at length and deemed it irrelevant.  ECF No. 56.[3] Bickley makes no argument that this conclusion was false, except to say that Dish Network's

---

[2]  In the event Bickley can present more concrete evidence to support his position that Dish Network accessed his consumer report after receiving the "no hit" response but before discovery for this case, and not under the circumstances described in the remainder of this Section, the Court will entertain a motion to reconsider on that ground.

[3]  The Court stated, "While the 'Echostar Risk' number may be a consumer report under the FCRA, DISH Network asserts that it only accessed the audit trial and uncovered the Echostar Risk number for the purposes of providing its vice president with information for her deposition for this lawsuit.  Plaintiff does not contest that DISH Network only accessed this audit trail the day before the deposition . . . .  Therefore, the Echostar Risk number is irrelevant to this issue."  ECF No. 56, at 7-8.

3

understanding of Equifax's answer is absurd without further discussion.  Therefore, this evidence cannot be considered new.

If Dish Network is incorrect in surmising the context surrounding Equifax's interrogatory answer, the Court does not consider the evidence new for another reason: it was previously available.  Evidence that Dish Network accessed Bickley's credit report at some point after the 2009 imposter phone call to American Satellite, and before Bickley filed this case, existed prior to and during the period for briefing the motion for summary judgment.  That Bickley contends he needed more time to conduct discovery against another defendant to uncover this information is immaterial to the present motion.  The Court is under no obligation to wait for the parties to signal their readiness for the Court to rule on motions that are properly filed and fully briefed within the deadlines established by the Court.  Any accusation that the Court's November Order was premature is therefore inapposite. The Court granted Bickley's motion for extension of time to file a response once, and if Bickley needed more time to engage in discovery, he could have so moved the Court.


Accordingly, this evidence fails to constitute new evidence sufficient to warrant reconsideration of the Court's November Order for three reasons: (1) Equifax's vague answer to an interrogatory is not substantive and probative enough to constitute evidence sufficient to warrant reconsideration; (2) the Court already discussed the evidence in the November Order, and/or (3) the evidence was previously available.  The Court will not sustain Bickley's motion on this ground.

B.

Bickley next argues that the Court committed clear error when it held that Dish Network showed the absence of any genuine issue of material fact as to its legitimate business need for the

credit report, such that Dish Network established it had a permissible purpose for accessing the information it received.  To maintain a claim for improper use or acquisition of a credit report under the FCRA, the plaintiff must show (a) that the defendant used or obtained (b) a credit report, as defined within the statute, (c) without a permissible statutory purpose.  *Godby v. Wells Fargo Bank, N.A.*, 599 F. Supp. 2d 934, 937 (S.D. Ohio 2008).  As a threshold matter, the Court based its ruling on two failures, not just Bickley's evidentiary failures as to the permissible purpose prong of the FCRA claim.[4]  The Court also sustained Dish Network's motion for summary judgment because Bickley failed to show enough evidence as to the second element, that the information Dish Network received was a consumer report under the FCRA.

The Court found that Dish Network received three types of information pertinent to this case: (1) the Echostar Risk number that the Court found irrelevant; (2) the "no hit" response that the Court found did not constitute a consumer report under the FCRA; and (3) the "header information" that the Court also found was not a consumer report.  Bickley provided no evidence to the contrary in its opposition to Dish Network's motion for summary judgment.  Similarly, Bickley offers no argument or evidence to show that this information constituted a consumer report in its motion for reconsideration and subsequent reply.  Bickley does not even address this element.  For that reason alone, the Court's analysis could stop here.  The Court did not commit clear error in holding that Bickley's FCRA claims failed.

With the utmost caution, the Court continues in its analysis only to show that its second reason for sustaining the summary judgment motion contained no clear error.  The Court found that

---

[4] In the November Order, the Court did not discuss in any detail the first element, whether Dish Network used or obtained the consumer report, because the Court found that if Bickley showed there was a credit report, he produced enough evidence to submit the question of whether Dish Network used or obtained the credit report to the jury.

American Satellite accessed Bickley's information for a legitimate business need, which is a permissible purpose under the FCRA.  The articulated legitimate business need was to confirm the identity of the caller and determine the caller's creditworthiness in connection with assessing whether the caller is qualified to receive Dish Network services.  Bickley's argument that this determination was clearly erroneous is unpersuasive.

Permissible purposes is defined in 15 U.S.C. § 1681b(a).  *See generally Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 816-17 (W.D. Ky. 2003)(discussing the definition of permissible purpose, but not in the context of an imposter or identity thief).  This provision defines permissible purposes for any consumer reporting agency furnishing a consumer report.  Here, the operative actor is not a consumer reporting agency as defined within the FCRA, and Dish Network did not furnish the consumer report to any other entity or person.  However, 15 U.S.C. §1681n and §1681o, the provisions under which Bickley brings his claims, establishes causes of action for entities wilfully or negligently obtaining consumer reports under false pretenses or without a permissible purpose.  Under this provision, an entity obtaining a consumer report must do so within the confines of the § 1681b(a) definition for permissible purposes.  "This is because a consumer reporting agency can legally issue a report only for the purposes listed in § 1681b.  If the agency is complying with the statute, then a user cannot utilize an account with a consumer reporting agency to obtain consumer information for a purpose not permitted by § 1681b without using a false pretense."  *Hansen v. Morgan*, 582 F.2d 1214, 1219 (9th Cir. 1978).

In the November Order, the Court correctly found that Dish Network's credit inquiry was made for a permissible purpose under § 1681b(a)(3)(F).  The Court relied on *Ewing v. Wells Fargo Bank*, 2012 WL 1844807, *4 (D. Ariz. May 21, 2012) in the November Order.  In *Ewing*, the Court

6

found that if the defendant made a credit inquiry because someone used the plaintiff's identity to apply for a credit transaction with the defendant, the defendant "might have had a legitimate reason for pulling Plaintiff's credit report." *Id.* Other courts have found a legitimate business need in comparable situations. *See, e.g.*, *Estiverne v. Sak's Fifth Avenue*, 9 F.3d 1171, 1173-74 (5th Cir. 1993)(holding that the defendant's obtaining of the plaintiff's "consumer report for the purpose of deciding whether to accept or reject a check in payment is a 'legitimate business need'").

This case law is consistent with the statutory language. Section 1681b(a)(3)(F) provides that a consumer reporting agency may furnish a consumer report "to a person which it has reason to believe-- . . . (F) otherwise has a legitimate business need for the information -- (i) in connection with a business transaction that is initiated by the consumer." On its face, the provision contemplates a situation wherein an entity accesses information about a consumer who is lying about his or her identity or creditworthiness, but the entity seeking access nevertheless has reason to believe that it had a legitimate business need for the consumer's information.[5] That Dish Network

---

[5]     Bickley offers *Andrews v. TRW, Inc.*, 225 F.3d 1063 (9th Cir. 2000), *rev'd on other grounds,* 534 U.S. 19 (2001), to support his contention that Dish Network had no reasonable belief that Bickley was the consumer. In *Andrews*, the Ninth Circuit asked whether the credit reporting agency had a reasonable belief that the plaintiff was the consumer involved in the credit transactions. *Id.* at 1067. The Court determined that the question should be left up to the jury, because a reasonable jury could find that the consumer reporting agency did not have a reasonable belief that the transaction involved the particular plaintiff where the last name merely matched a social security number on file.

        This opinion is not controlling for two reasons. First, the Court was analyzing the term "involve" as it is used in 15 U.S.C. § 1681b(a)(3)(A), and consulting dictionary definitions of the term. However, the permissible purpose cited by Dish Network here falls under the purview of 15 U.S.C. § 1681b(a)(3)(F), which does not contain the word "involve", as Bickley correctly noted in his Reply. ECF No. 67. Second, *Andrews* sheds light on a consumer reporting agency's reasonable beliefs when furnishing consumer reports in instances where the consumer at issue is an imposter or identity thief. This is not the situation at hand. Presently, the Court is dealing with the reasonable belief of a *user* of consumer reports, which is manifestly different than a consumer reporting agency furnishing those reports. Under the FCRA, a consumer reporting agency functions as a sort of gatekeeper of consumer credit information, while a user of that information possesses no such function. Comparatively, the level of "reasonable belief" that the user of a consumer report must have is lower and more easily achieved. Where the consumer calls an entity purportedly to obtain network services, provides a name, address and social security number, an entity has a reasonable belief that they are interacting with the actual consumer named until they engage in the credit inquiry process. Accordingly, *Andrews* does not bear on the present situation, and the Court finds that Dish Network had a reasonable belief that it was inquiring into an individual's consumer report for a permissible

did not actually engage in a transaction with Bickley, or that Bickley was not the individual who actually initiated the transaction, does not obviate that Dish Network accessed Bickley's information with a reasonable belief that it had a legitimate business need for the information.   American Satellite used the Dish Network interface in connection with a potential sale of network services, and based on the caller providing personal information, had reason to believe that it was engaging in a transaction with a potential customer who initiated the call.   Accordingly, under the § 1681b(a)(3)(F) definition, Dish Network obtained the information with a permissible purpose.[6]

In sum, the Court committed no clear error of law in the November Order.  First, Bickley does not contest the Court's decision as to Bickley's failure to show that Dish Network accessed a consumer report, as defined in the FCRA, leaving that decision in tact.  On this ground alone, the Court will not reconsider its November Order.  Going further, however, the Court's analysis as to Dish Network's permissible purpose in the November Order is consistent with the law on the subject.  Accordingly, Bickley's motion must be denied.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff Gregory Bickley's Motion to Reconsider is DENIED.

---

purpose.
[6]  If Dish Network accessed the information in connection with these proceedings, this too constitutes a permissible purpose.  *Spence v. TRW, Inc.*, 92 F.3d 380 (6th Cir. 1996)("The filing of the lawsuit obviously gave TRW reason to believe that MichCon had a 'legitimate need' for the report, such a need having arisen in connection with the preparation of MichCon's defense to the lawsuit.").  As stated above, this Echostar Risk score inquiry also remains irrelevant to Bickley's claim for damages resulting from a period extending from the imposter phone call to American Satellite in October 2009 to when Bickley filed suit arising from the consequences of that call in November 2010.

cc:     Counsel of Record