## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: May 13, 2014

Mr. Shea W. Conley
Mr. Matthew T. Lockaby
Ms. Lauren Desiree Lunsford
Reminger
269 W. Main Street, Suite 700
Lexington, KY 40507

Mr. Zachary LeRoy Taylor
455 S. Fourth Street, Suite 1445
Louisville, KY 40202

Re: Case Nos. 13-5956/13-5979, *Gregory Bickley v. Dish Network LLC, et al*
Originating Case No. : 3:10-cv-00678

Dear Counsel,

  The court today announced its decision in the above-styled case.

  Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc: Ms. Vanessa L. Armstrong

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0098p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

GREGORY BICKLEY,

    *Plaintiff-Appellant/Cross-Appellee,*

v.

DISH NETWORK, LLC,

    *Defendant-Appellee/Cross-Appellant.*

Nos. 13-5956/5979

Appeal from the United States District Court
for the Western District of Kentucky at Louisville
No. 3:10-cv-00678—John G. Heyburn II, District Judge.

Decided and Filed:  May 13, 2014

Before: DAUGHTREY, McKEAGUE, and DONALD, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Zachary L. Taylor, MURPHY & POWELL, PLC, Louisville, Kentucky, for Appellant/Cross-Appellee.  Shea W. Conley, Matthew T. Lockaby, Lauren D. Lunsford, REMINGER CO., LPA, Lexington, Kentucky, for Appellee/Cross-Appellant.

_____

## OPINION

_____

    McKEAGUE, Circuit Judge.  This is a case about identity theft and apparently reflects the axiom that no good deed should go unpunished.  The issue presented is whether a corporation violates the Fair Credit Reporting Act when it obtains a "consumer report" in the name provided by an imposter in order to verify a consumer's identity and eligibility for a business service.  As we determine that Dish Network's conduct complied with the Fair Credit Reporting Act, we

1

**AFFIRM** the district court's grant of summary judgment on the related claims. We also **AFFIRM** the district court's entry of judgment on Dish's counterclaim for abuse of process.

## I.　　FACTS

On October 7, 2009, American Satellite, an independent, third party retailer of satellite television services for Dish Network ("Dish"), received a phone call from a potential consumer interested in obtaining satellite television. For reasons that are not clear from the record, the initial caller, Patrice Louis, was unable to open an account. She then placed her "cousin," who purportedly resided in the same household, on the phone. This second person, who identified herself as "Gregina Dickley,"[1] provided the American Satellite representative with what she claimed to be her social security number. In actuality, the number belonged to Gregory Bickley, the plaintiff in the present case. Dickley was an identity thief, and Bickley would have been the victim, but for the actions taken by American Satellite.

The American Satellite representative then inputted Dickley's name and social security number into an interface that connects to three credit reporting agencies: Equifax, Experian, and TransUnion. The agencies followed a "waterfall" process as they attempted to cross-verify that the information matched. The basic process was as follows: the first agency assessed whether the social security number corresponded to the consumer's name. If a match was found, in this instance by Equifax, it would inform American Satellite that the person was "Approved;" but if the search revealed a "Declined No Hit" response, Equifax would send the consumer's information to a second agency, Experian, to run the information through a similar cross-verification process. If this second search also returned a "Declined No Hit" response, Experian would forward the information to a third credit agency, TransUnion, which would run the information through its databases. If TransUnion also returned a "Declined No Hit" response, it would forward this final determination to the requesting company.

In the present case, TransUnion responded to the American Satellite representative with "Declined No Hit." This indicated that, following the "waterfall" process, all three credit agencies—Equifax, Experian, and Transunion—had been unable to find a positive match based

---

[1] This name is also referenced by some of the documents as "Crgringrina Dickley." R. 42-2, Decision Detail Report, PageID # 469.

on the information provided. After receiving the TransUnion notification, American Satellite informed Dickley that her attempt to open a new account had been declined. This short conversation between an identity thief attempting to open an account using fraudulent information and the American Satellite representative provides the humble origins for the present litigation.

On October 20, 2009, Bickley received a credit report indicating that "Dish" had purportedly made an inquiry of some kind under his name. Whether Dish actually made the inquiry or whether the credit report indicated that Dish had made the inquiry because American Satellite contacted the credit agencies using Dish's credit-agency interface is disputed. Regardless, shortly after Bickley learned about the "Dish" inquiry, Dish contacted him and informed him that someone had attempted to open an account in his name. Dish even provided Bickley with a recording of the phone conversation between the American Satellite representative and the identity thief, Dickley.

Almost a year after learning about the "Dish" inquiry, and despite knowing that the inquiry had prevented the theft of his identity, on November 3, 2010, Bickley filed a complaint initiating the present litigation. The complaint alleged that Dish wilfully and negligently violated the Fair Credit Reporting Act ("Fair Credit Act"), 15 U.S.C. § 1681b, by requesting and using his credit report without having a "permissible purpose." Despite this allegation, or perhaps precisely because this allegation hinges on the existence of a "permissible purpose," neither the complaint nor the amended complaint make *any mention* of the attempted identity theft. When asked at his deposition whether the identity theft, which triggered the credit inquiry in the first place, was an important aspect to this case, Bickley responded, "Possibly. I'm not too sure." R. 36-2, Bickley Dep. at 87, PageID # 306. We are not so lukewarm, and find the conspicuous underdevelopment of this key factual detail in Bickley's complaint *and* in the briefs bordering on deceitful.

Not content with merely alleging a statutory violation, Bickley also contended in the complaint that Dish intentionally inflicted emotional distress through its conduct. That is, Bickley alleged that, despite having more than one dozen other credit inquiries on his report, he

"suffer[ed] severe mental and emotional distress, anguish, humiliation, and loss of privacy"[2] because Dish allegedly received a consumer report that enabled it to prevent the theft of Bickley's identity.

Following Bickley's complaint, Dish filed a counterclaim for abuse of process. Dish contended that Bickley lacked good faith in bringing his Fair Credit Act claim because he knew that the credit score inquiry had actually been undertaken by American Satellite, not Dish, and that any indication that Dish had made the inquiry was due to the fact that American Satellite contacted the credit agencies using Dish's credit-agency interface. Dish also argued that Bickley had brought suit against it, instead of American Satellite, which was then defunct, in order to extort settlement money. Dish subsequently moved for summary judgment on all of Bickley's claims and further requested that the district court enter a default judgment in its favor or, in the alternative, grant summary judgment on its counterclaim because Bickley had failed to answer or respond. Bickley contested the motion for summary judgment and, in turn, moved for judgment on the pleadings with regard to Dish's counterclaim.

The district court granted Bickley's motion for judgment on the pleadings with regard to the abuse of process claim, as well as Dish's motion for summary judgment on the Fair Credit Act claims. Bickley then moved the court to reconsider, and after granting an extension of time for additional discovery, the district court affirmed the original grant of summary judgment for Dish on the Fair Credit Act claims. Bickley now appeals the grant of summary judgment, and Dish has cross-appealed the entry of judgment on the pleadings as to Dish's abuse of process counterclaim.

## II.   ANALYSIS

We review the district court's grant of summary of judgment *de novo*. *Newell Rubbermaid, Inc., v. Raymond Corp.*, 676 F.3d 521, 526 (6th Cir. 2012). When reviewing such a grant, we draw all inferences in the light most favorable to the nonmoving party and assess whether the "record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In

---

[2] Bickley made similar allegations against the credit agency Equifax. The district court dismissed these claims following notice of a settlement.

other words, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a).

The Fair Credit Reporting Act of 1970, 15 U.S.C. § 1681, is designed to accomplish dual goals: "to promote efficiency in the Nation's banking system and to protect consumer privacy." *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001); *see also* 15 U.S.C. § 1681(a)(4). Towards this end, the Fair Credit Act regulates the permissible uses of "consumer reports," which summarize credit history and credit worthiness, *see* 15 U.S.C. § 1681b, and creates a private right of action allowing injured consumers to recover for negligent and willful violations of the Fair Credit Act. *See* 15 U.S.C. § 1681n (willful violations); 15 U.S.C. § 1681o (negligent violations).

Bickley has brought claims against Dish under both 15 U.S.C. § 1681n and § 1681o. To maintain a claim for improper use of a credit report, the plaintiff must prove that the defendant acted with the specified level of culpability.[3] The plaintiff must also show three elements: "(i) that there was a 'consumer report' within the meaning of the statute; (ii) that the defendant used or obtained it; *and* (iii) that the defendant did so without a permissible statutory purpose." *Godby v. Wells Fargo Bank, N.A.*, 599 F. Supp. 2d 934, 937 (S.D. Ohio 2008); *Phillips v. Grendahl*, 312 F.3d 357, 364 (8th Cir. 2002) *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007). If Bickley fails to demonstrate any element of this analysis, the Fair Credit Act claim must fail. We address each element in turn.

1) *Was there a "consumer report" within the meaning of the statute?*

The district court sustained Dish's motion for summary judgment after determining that Bickley had failed to show enough evidence that Dish received a "consumer report" under the Fair Credit Act. A "consumer report" is defined as the following:

> The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a *consumer's credit worthiness, credit standing, credit capacity, character, general reputation,*

---

[3] Dish raises a number of defenses on appeal, such as arguing that it did not have an agency relationship with American Satellite and that insufficient evidence has been presented that it had the requisite mental state. We do not address these arguments because we find the presence of a "permissible purpose" to obtain a credit report to be dispositive.

> *personal characteristics, or mode of living* which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--
>
>> (A) credit or insurance to be used primarily for personal, family, or household purposes;
>>
>> (B) employment purposes; or
>>
>> (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1) (emphasis added). Bickley contests the district court's determination that Dish did not receive a "consumer report." Although there is compelling evidence that American Satellite contacted the credit agencies using Dish's credit-agency interface, and that Dish only accessed Bickley's "consumer report" when it investigated and provided discovery responses in the present case, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Bickley points to several different pieces of evidence as proof that Dish obtained a "consumer report." (1) Bickley's "credit report" from Equifax indicates that "Dish Network" made an "inquiry"[4] on October 7, 2009. (2) Internal records from Equifax vaguely indicate that Dish made an "identification inquiry" and a "credit report inquiry" on October 7, 2009. (3) An email from counsel for Equifax indicates that Dish received only "header" information on October 7, 2009. (4) A report produced by Dish during discovery and titled the "Decision Detail Report," which was purportedly created on October 7, 2009, shows Bickley's Echostar Risk number, which is discussed further *infra*. (5) On the motion to reconsider the grant of summary judgment, Bickley presented to the district court an interrogatory response from Equifax, which provides, "[o]n or about October 7, 2009, Dish Network requested a consumer report from Equifax for an individual that Dish Network identified as Crgringrina Dickley . . . . Equifax provided Dish Network with a copy of Plaintiff's credit file because the file contained a matching social security number and address."

---

[4]While the parties and the credit agencies may refer to some of these documents as "inquiries," "credit reports," or "consumer reports," the term "consumer report" has legal significance and is statutorily defined. We, therefore, look at the contents of the reports themselves to assess whether they reach the threshold established in 15 U.S.C. § 1681a(d)(1), rather than conclusorily determining that something is a "consumer report" based upon the parties' idiosyncratic and self-serving nomenclature.

Nos. 13-5956/5979    *Bickley v. Dish Network*    Page 7

While we agree with the district court that the credit inquiries resulting in a "Declined No Hit" response (1 & 2) and that the ambiguously termed "Header Information" (3) are not "consumer reports," the Decision Detail Report (4) appears to be a consumer report. Both parties acknowledge that the Decision Detail Report contains an "Echostar Risk" number, which is "based on the number of consumer initiated inquiries in the past 12 months, length of time bank revolving accounts have been opened, length of time accounts have been opened, and the percent of accounts opened in the past 24 months versus total accounts reported in the past 12 months." R. 42-2, Decision Detail Report, PageID # 471. The Echostar Risk number clearly has bearing on a consumer's credit worthiness, and therefore is a "consumer report" as defined under 15 U.S.C. § 1681(d).[5] As to when Dish allegedly received the report, under the "Summary Section," the document states, "Date Created 10/07/2009." This is the same date that Dickley attempted to fraudulently open a Dish account. In addition to the Decision Detail Report, Equifax's admission (5) that it "provided Dish Network with a copy of Plaintiff's credit file" also suggests that Dish might have been provided a "consumer report." *See* R. 37-1, Picchione Dep. at 35-36, PageID # 360–61.

Taken altogether, there is sufficient evidence for a rational trier of fact to find that there was a "consumer report" within the meaning of the statute, meaning that Bickley has satisfied the first element of his claim for improper use of a credit report.

2) ***Did Dish "use or obtain" the "consumer report"?***

We next turn to the "use or obtain" element. This is more easily disposed of. The district court found that Dish "use[d] or obtain[ed]" a "consumer report." *See* R. 56, Op. & Order, at 7 n.7, PageID # 578. Dish does not contest this allegation on appeal, *see* Def. Br. at 17, and even if it did, the aforementioned evidence in the record creates a genuine issue of material fact

---

[5]The District Court also concluded that the Decision Detail Report might be a "consumer report," but nonetheless found that that the Decision Detail Report was "irrelevant" to the litigation because Bickley had "not contest[ed] that Dish Network only accessed [the Decision Detail Report] the day before the deposition." The determination that the issue was uncontested is not borne out by the record. Bickley spent several pages of his "Opposition to Dish Network's Motions for Default and Summary Judgment," which was presented to the district court, arguing that Dish Network had previously received Bickley's "consumer report." Bickley also attached the Decision Detail Report as an exhibit to his motion. While Bickley certainly could have been clearer as to when Dish Network obtained his "consumer report"—one might even argue that his language is purposefully opaque—we cannot say that he conceded that the Decision Detail Report was only accessed one day before the deposition.

Nos. 13-5956/5979  *Bickley v. Dish Network*  Page 8

regarding whether Dish obtained Bickley's "consumer report" on October 7, 2009. Thus, the second element is also established.

3) ***Did Dish use the "consumer report" without a permissible statutory purpose?***

The final and dispositive question presented is whether Dish used the alleged "consumer report" without a permissible statutory purpose.[6] Under the Fair Credit Act, any consumer reporting agency may furnish a "consumer report" to a person that it has reason to believe will use the information for one of several permissible purposes detailed in 15 U.S.C. § 1681b. One such "permissible purpose" arises when the person "otherwise has a legitimate business need for the information . . . in connection with a business transaction that is initiated by the consumer." 15 U.S.C. § 1681b(a)(3)(F)(i). Accordingly, we first look into whether there was a legitimate business need, and second whether it was in connection with a business transaction initiated by the consumer.

   *i.*  *Was there a legitimate business need?*

Dish contends that it had a legitimate need: "verifying the identity and qualification of the caller for satellite television service." Def. Br. at 20. While this is an issue of first impression before this circuit, like the district court, we are persuaded that verifying the identity of a consumer and assessing his eligibility for a service is a "legitimate business need," and therefore constitutes a permissible statutory purpose. It also seems beyond dispute that a "legitimate business need" exists to prevent identity theft.

Bickley presents multiple arguments on appeal as to why Dish did not have a "legitimate business need." 15 U.S.C. § 1681b(a)(3)(F)(i). None of them are compelling, nor are they supported by the case law. Beginning with the statutory terms, the term "legitimate business needs" refers to the person who has requested the report—in this instance, it refers to Dish—not to the consumer. *See Pappas v. City of Calumet City*, 9 F. Supp. 2d 943, 949 (N. D. Ill. 1998);

---

[6]The parties hotly contest whether American Satellite or Dish requested the "consumer report." We assume for purposes of our analysis that Dish requested the report, but in either event, our analysis is the same. There is no question that Dickley, the imposter, requested Dish satellite service, albeit through American Satellite. Thus, the issue of whether either company had a "permissible purpose" in requesting the "consumer report" is identical. Both American Satellite and Dish were acting as satellite television service providers. For this reason, we reject Bickley's disingenuous argument that American Satellite, a third-party retailer of Dish services, might have had a permissible purpose in requesting his "consumer report," but not Dish itself.

Nos. 13-5956/5979          *Bickley v. Dish Network*                              Page 9

*Fernandez v. Retail Credit Co.*, 349 F. Supp. 652, 654–55 (E.D. La. 1972). We thus review whether Dish had a "legitimate business need" for the information.

The case law makes clear that a company has a "legitimate business need" when it assesses a consumer's *eligibility* for a business service. *See Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 816–17 (W.D. Ky. 2003) ("Congress primarily envisioned consumer reports being disseminated for the purposes of assessing 'eligibility.'"); *Godby*, 599 F. Supp. at 940–41 (similar); FTC Informal Staff Opinion Letter, William Haynes (Mar. 2, 1998) (similar). For example, in *Estiverne v. Sak's Fifth Avenue*, the Fifth Circuit held that a retail store had a "legitimate business need" when it requested a credit report to determine whether or not to accept or reject a consumer's check. 9 F.3d 1171, 1173 (5th Cir. 1993); *accord Ewing v. Wells Fargo Bank*, No. CV11–8194–PCT–JAT, 2012 WL 1844807, *5 (D. Az. May 21, 2012); *Williams v. AT&T Wireless Services, Inc.*, 5 F. Supp. 2d 1142, 1152 (W.D. Wash. Feb. 23, 1998). Just as the retailer in *Estiverne* had a legitimate business interest in attempting to avoid being defrauded, other service providers, like Dish, have a legitimate interest in confirming that prospective consumers are who they claim to be and are eligible for services. This prevents the corporation from providing services that might not be reimbursed and protects innocent consumers like Bickley whose identity might otherwise be stolen. The case law, thus, points to one inescapable conclusion: Dish had a "legitimate business need" when it allegedly obtained the Bickley's consumer report.

Bickley does not address any of these cases, though many were relied upon by the district court, preferring instead to draw this court's attention to *dicta* in *Andrews v. TRW Inc.*, 225 F.3d 1063 (9th Cir. 2000), *reversed on other grounds*, 534 U.S. 19 (2001). *Andrews* focused on whether a credit agency had "reasonable grounds" under 15 U.S.C. § 1681b(a)(3)(A) *for providing a credit report* to an imposter, claiming to be the plaintiff. We are concerned here with whether a business, not a credit agency, had a "legitimate business interest" *in requesting and obtaining* a report under 15 U.S.C. § 1681b(a)(3)(F). Not only are these distinct statutory sections, but they also contain distinct standards on the basis that a credit reporting agency, unlike a regular business, provides a gatekeeper function for sensitive credit information. *See* R. 68, Op. & Order at 7 n.5, PageID # 749. Bickley's attempt to recharacterize the *Andrews*

Case 3:10-cv-00678-JGH-DW Document 75 Filed 05/13/14 Page 11 of 15 PageID #: 810

(11 of 15)

Nos. 13-5956/5979     *Bickley v. Dish Network*     Page 10

holding as focusing on "the legitimate business need" standard is clearly belied by the fact that the words "legitimate business need," or any combination thereof, are never used in the opinion, nor is there *any* discussion on the point. As *Andrews* addressed a different standard and credit-agency focused issues, which are not raised here, we do not find the court's *dicta* to be persuasive or relevant to the present inquiry.

Finally, Bickley argues that once Dish received the "Declined No Hit" response, it no longer had any need to request his credit report. But this broadly overstates the case. A "Declined No Hit" response is not the same as a "Fraud Alert" response, which raises the immediate specter of identity theft. From Dish's perspective, it was still dealing with a potential consumer. This is why after receiving the "Declined No Hit" response, the American Satellite representative still discussed other promotions with Dickley; there was not yet a reason to suspect identity theft. We are left then with an initial inquiry and an alleged subsequent request for a "consumer report" that were made on the same day and were for the same purpose. As both requests were prompted by legitimate business needs—specifically, the need to clarify the consumer's identity and to ascertain his eligibility for service—the alleged request for a "consumer report" was supported by a permissible statutory purpose.

In sum, on October 7, 2009, at the time Dish allegedly accessed Bickley's credit report, it believed that he was a potential consumer. Following the relevant case law, Dish had a "legitimate business need" to request his consumer report. We reject the contention that a company, dealing with an imposter purporting to be the consumer, should be held liable when the company attempts in good-faith to verify the consumer's identity and eligibility for commercial services. To hold otherwise would twist the underlying purpose of the statute and punish companies for preventing identity theft.[7] The Fair Credit Act was not intended to be used as a sword against businesses protecting consumers' identities, and we decline to grant such a weapon to a party as litigious and seemingly insensible of the benefit that he has received as Bickley.

---

[7] Even Bickley acknowledges that the October 7, 2009 inquiry was undertaken to verify the consumer's identity in a transaction purportedly initiated by the consumer. R. 36-2, Bickley Dep., PageID # 307–08.

Nos. 13-5956/5979　　　*Bickley v. Dish Network*　　　Page 11

    *ii.　　Was this business transaction initiated by the consumer?*

    Bickley next contends that he did not "initiate" the business transaction with Dish, and therefore, that it cannot be said that Dish "otherwise ha[d] a legitimate business need for the information—in connection with a business transaction that is initiated by the consumer." 15 U.S.C. § 1681b(a)(3)(F)(i).  We reject such a hollow argument.  Bickley is suggesting that Dish violated the statute when it attempted to verify that it was in compliance with the statute by ensuring that the transaction had in fact been initiated by the consumer.  This cannot be accurate, which is perhaps why there is, unsurprisingly, *no* case law to support the position.  The requirement that a consumer "initiate" a business transaction is designed to protect a consumer's privacy and credit-related data by preventing companies from running credit checks that are unrequested by the consumer.  It is readily apparent that such malfeasance did not occur in the present case.  To the contrary, by executing a cross-verification process, Dish safeguarded the integrity of Bickley's data and identity.

    Bickley's reading of the statute blithely ignores that a consumer did initiate the transaction, and that Dish believed in good faith that Bickley was "the consumer."  It also overlooks that Dish's alleged conduct *conferred a benefit* to Bickley.  He did not become the victim of identity theft precisely because of Dish's precautions.  Other courts have noted that it is reasonable to "infer the consumer's implicit waiver or consent" where the business' conduct "is exactly the sort of thing the Fair Credit Act seeks to promote." *TransUnion Corp. v. F.T.C.*, 8 F.3d 228, 234 (D.C. Cir. 1996); *see also Smith*, 275 F. Supp. 2d at 817 ("Congress intended to allow access to a consumer report either when that access would benefit a consumer or would facilitate the collection of a pre-existing debt.").  Here, Dish's alleged conduct is perfectly consonant with the underlying purpose of the consumer-initiated business transaction.  Dish attempted to protect a consumer, while simultaneously providing a service that is permitted by the Fair Credit Act.

    As Dish reasonably believed the transaction was initiated by the consumer, and as Dish's subsequent conduct was undertaken to protect the consumer and pursue a legitimate business need, we conclude that Dish had a "legitimate business need" for the information and a

"permissible purpose" to obtain Bickley's "consumer report." Thus, we **AFFIRM** the district court's grant of summary judgment on the Fair Credit Act claims.

4) *Did the District Court err in entering judgment on the pleadings as to Dish's counterclaim for abuse of process?*

The final question presented is whether the district court erred in entering a judgment on the pleadings as to Dish's abuse-of-process counterclaim. Dish alleges that Bickley lacked good faith in bringing his Fair Credit Act claim and that it was entitled to either a default judgment because Bickley failed to respond, or alternatively, to summary judgment. The district court addressed Dish's counterclaim on the pleadings, not on a motion for summary judgment or on a motion for default. R. 54, Op. & Order at 5, PageID # 570 ("IT IS HEREBY ORDERED that Bickley's Motion for Judgment on the Pleadings is SUSTAINED.") On appeal, our jurisdiction is limited to the "final decisions of the district court of the United States." 28 U.S.C. § 1291. We therefore limit our analysis to whether the district court properly granted Bickley's Rule 12(c) motion to dismiss.

We review a district court's motion for judgment on the pleadings *de novo*. *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327. In assessing the pleadings, we take as true "all well-pleaded material allegations." *United States v. Moriarty*, 8 F.3d 329, 332 (6th Cir. 1993). "The motion [for judgment on the pleadings] is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

Under Kentucky law, "[t]he essential elements of an action for abuse of process are (1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1998). In its counterclaim, Dish formulaically repeated these same elements without any additional explanation. "Plaintiff had an ulterior purpose, lacking good faith, for filing this groundless action against Dish Network. In filing an action against Dish Network which he knew was meritless, the Plaintiff acted wilfully and intentional in the use of process not proper in the regular conduct of legal proceedings." R. 34, First Amended Counterclaim, at 8, PageID # 211. The district court rejected Dish's counterclaim after determining that it "consist[ed] of a recitation of the language comprising the

essential elements of the tort of abuse of process without further divulgence of any factual allegations or inferences that tend to prove the existence of those elements." R. 54, Op. & Order at 7, PageID # 569. We agree. It is not enough to allege an ulterior purpose without explaining what that purpose actually was. Dish now contends that Bickley's ulterior purpose was to extort money from it by abusing the legal process, but this allegation was not clear from Dish's complaint.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" in pleading a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As Dish has offered only a formulaic recitation of the elements of the cause of action, we **AFFIRM** the district court's dismissal of the counterclaim on the pleadings.

Although we dismiss Dish's claim for abuse of discretion, we want to make clear that we are not addressing the propriety of Rule 11 sanctions. Whether Bickley's suit and then subsequent motion for reconsideration and then subsequent appeal following a well-considered district court judgment were intended for an impermissible purpose, such as to extort settlement money from Dish Network, or whether Bickley's claims constituted frivolous arguments because they were unsupported by any case law, or whether Bickley's mischaracterization or omission of key factual contentions were intended to purposefully mislead the court, are not properly before us.

### III.    CONCLUSION

For the aforementioned reasons, we **AFFIRM** the district court's grant of summary judgment on the Fair Credit Act claims, and we also **AFFIRM** the district court's entry of judgment on the pleadings for the abuse of process claim.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 13-5956/5979

GREGORY BICKLEY,

    Plaintiff - Appellant/Cross - Appellee,

v.

DISH NETWORK, LLC,

    Defendant - Appellee/Cross - Appellant.

```
FILED
May 13, 2014
DEBORAH S. HUNT, Clerk
```

Before: DAUGHTREY, McKEAGUE, and DONALD, Circuit Judges.

**JUDGMENT**

On Appeal from the United States District Court
for the Western District of Kentucky at Louisville.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION WHEREOF, and for the reasons more fully set forth in the Court's opinion of even date, it is ORDERED that the district court's grant of summary judgment on the Fair Credit Act claims and its entry of judgment on the pleadings for the abuse of process claim are AFFIRMED.

ENTERED BY ORDER OF THE COURT

_/s/ Deborah S. Hunt_

Deborah S. Hunt, Clerk